UNITED STATE DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TEAM RUBICON GLOBAL, LTD., a Delaware Corporation,<br><br>              Plaintiff,<br>   v.<br>TEAM RUBICON, INC., a Minnesota Corporation,<br><br>              Defendant. | Civil Action No. 1:20-cv-2537<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff TEAM RUBICON GLOBAL, LTD., a Delaware corporation, demanding trial by jury, files this complaint against Defendant TEAM RUBICON, INC., a Minnesota corporation, alleging as follows:

## PRELIMINARY STATEMENT

1. This is a civil action by Plaintiff Team Rubicon Global, Ltd. ("TRG") against Defendant Team Rubicon, Inc. ("TR-USA") for declaratory relief, breach of contract, tortious interference with contract, and tortious interference with prospective economic advantage.

2. TR-USA is a non-profit organization that was founded in 2010 with the admirable goal of using the skills and experience of volunteer U.S. Military Veterans to assist with disaster relief efforts around the globe. In 2014, TRG was formed as a legally separate non-profit to focus on the exportation of the "Team Rubicon" model to other countries, creating opportunities for veterans of other countries to likewise put their valuable skills to use to help victims of natural disasters.

3. In 2015, TR-USA and TRG entered into a Master Trademark License Agreement (the "MTLA"), pursuant to which TRG possesses the *exclusive* right to use and sublicense

1

"Team Rubicon" and related marks outside the United States.  TRG's rights are exclusive even as to TR-USA, under the MTLA.

4.     Since its inception, TRG has established links with sister organizations in the United Kingdom, Canada, Australia and Norway, sublicensing the Team Rubicon marks to each sister organization (a so-called "TR-X") for use in its respective country.  Talks with potential organizational partners in other countries, including Netherlands, Germany, and France, are ongoing, but dependent on the existing TR-Xs meeting certain milestones before TRG is able to expand the Team Rubicon brand further.

5.     The MTLA has an initial term of 20 years.  Nevertheless, in December 2019, with approximately 16 years remaining on the initial term, TR-USA purported to terminate the MTLA for cause.  TR-USA claimed that it was invoking a term in the MTLA which permits termination of the agreement in the event that TRG has engaged in misconduct that is materially and adversely detrimental to the licensed trademarks and/or associated goodwill, and if TRG has failed to cure the problem within 60 days.

6.     TR-USA has attempted to justify the termination on factors that are completely baseless.  TR-USA cites only to an alleged, non-public incident that necessarily had no effect of any kind on the licensed trademarks or associated goodwill, given that the incident, even if it happened as alleged, was private.  Moreover, the incident in question, even as alleged, involved no conduct of any kind by TRG or anyone within the control of TRG.  Finally, TRG took every action that TR-USA asked of it in response to the alleged incident, except for one requested action that was not within its control.  Thus, for multiple reasons, the termination clause that TR-USA cited has not been validly invoked.  Instead, the MTLA remains in force.

7.     After TR-USA improperly attempted to terminate the MTLA, TR-USA began

accusing TRG of infringing its marks in multiple communications with TRG, the TR-Xs, and other third parties. But because the MTLA remains in force, TR-USA's allegations are baseless. Under the MTLA, TRG continues to hold an exclusive license to use and sublicense the marks outside the United States.

8. Indeed, both prior to and subsequent to the purported termination of the MTLA, TR-USA has taken actions to interfere with the relationships between TRG and its foreign sublicensees. Notably, it has induced a Canadian affiliate to try to repudiate its relationship with TRG and enter into a replacement relationship with TR-USA, even though under the MTLA, it is TRG and not TR-USA that has the exclusive right to license the Team Rubicon marks outside the United States.

9. Moreover, when other of TRG's foreign sublicensee have chosen to reject TR-USA overtures and instead remain faithful to their agreements with TRG, TR-USA has sought to disrupt TRG and its foreign partners, interfering with the fund-raising efforts of TRG and the TR-Xs, and costing TRG and its TR-X affiliates substantial losses in dollars, opportunities, while significantly hampering humanitarian assistance efforts.

10. TRG therefore brings this action to obtain a judicial declarations that the MTLA has been not validly terminated and remains in force and that TRG has not infringed on any of TR-USA's marks. TRG also seeks to hold TR-USA responsible for the significant harms it has caused to TRG, TRG's global network of sublicensee TR-X sister organizations, and to restore TRG's critical humanitarian efforts.

## PARTIES

11. Plaintiff Team Rubicon Global, Ltd. is a Delaware corporation with its principal base of operations in Washington D.C.

12. Defendant Team Rubicon, Inc. is a Minnesota corporation with its principal base of operations in Los Angeles, California.

## JURISDICTION AND VENUE

13. This Court has original jurisdiction of this matter pursuant to 28 U.S.C., Section 1332. Plaintiff Team Rubicon Global, Ltd. and Defendant Team Rubicon, Inc., are citizens of different states. The amount in controversy in this matter exceeds $75,000.

14. Venue here is proper pursuant to 28 U.S.C., Section 1391 because pursuant to the MTLA, the parties to this dispute have agreed to the jurisdiction of this Court and to venue in this district and have both irrevocably waived any claim that venue in this district is improper.

## GENERAL ALLEGATIONS

**A.    The Team Rubicon Network**

15. In January 2010, two United States Marine veterans, William McNulty and Jake Wood, led a small team of volunteers into Haiti to provide assistance in the aftermath of the major earthquake which had recently devastated that country. They called their group "Team Rubicon," referencing the famous river that Julius Caesar crossed after making a fateful decision, committing himself and his forces to battle.

16. That same month, Team Rubicon, Inc. ("TR-USA") was officially formed as a non-profit organization committed to leveraging the unique skills and experience of military veterans in order to provide disaster assistance to underserved communities. In pursuing this goal, the founders believed that the organization could not only help people in need but would also help veterans transition to civilian life by fostering a sense of purpose, community, and identity.

17. In the years that followed, TR-USA grew. It recruited many veteran volunteers to

its response teams, increased its fund-raising, and partnered with prominent individuals and organizations in an effort to promote its mission.

18. By late 2012, William McNulty and others were interested in exploring how the TR-USA model could be extended to involve veterans in places other than the United States, particularly in countries whose militaries have worked side-by-side with their U.S. counterparts on missions throughout the world. TR-USA set up an International Expansion Committee to explore the possibilities.

19. In April 2013, the International Expansion Committee issued a report recommending expansion and proposing that a new entity be formed to direct and oversee such expansion, given the likelihood that potential foreign partners would prefer to work under the auspices of an international, rather than thoroughly American, entity.

20. By September 2013, international expansion had been identified as one of four key strategic objectives of TR-USA.

21. On August 6, 2014, the TR-USA Board of Directors approved the formation of a separate legal entity to pursue the expansion of the Team Rubicon model outside the United States.

22. That legally separate entity, Team Rubicon Global, Ltd. ("TRG"), was formally incorporated in the State of Delaware on or about December 5, 2014.

23. TRG employs a "hub and spoke" model, whereby TRG (the hub) launches sister organizations in foreign countries (the spokes, an individual spoke being often referred to as a "TR-X") in order to "export" the Team Rubicon model – including the philosophies, values, practices, strategies and tactics inherent in that model – onto each TR-X "spoke."

24. So that TRG could fulfill its mission, TR-USA and TRG entered into a Master

Trademark License Agreement (the "MTLA") on or about October 9, 2015. Pursuant to the MTLA, TR-USA has provided TRG with "an exclusive (even as to Licensor) non-assignable, fully-paid up, royalty free license to use the Licensed Marks" in "any jurisdiction worldwide, other than the United States" for an initial term of 20 years. The "Licensed Marks" include the mark "TEAM RUBICON," which TR-USA had earlier registered in a handful of foreign jurisdictions and in which TR-USA claims common law rights in the United States, as well as a related word-and-design mark and a related designed mark. While the license is non-assignable, it includes the right to sublicense the marks outside the United States.

25. TR-USA has subsequently registered the "TEAM RUBICON" mark with the United States Patent and Trademark Office.

26. Since its founding TRG has pursued and executed its mission. In October 2015, TRG entered into an agreement with an organization in the United Kingdom establishing Team Rubicon UK ("TR-UK").

27. In November 2016, TRG entered into an agreement with an organization in Canada establishing Team Rubicon Canada ("TR-CAN").

28. In December 2016, TRG entered into an agreement with an organization in Australia establishing Team Rubicon Australia ("TR-AUS").

29. In March 2019, entered into an agreement with an organization in Norway establishing Team Rubicon Norge ("TR-NOR").

30. TRG is also pursuing opportunities for the establishment of additional TR-Xs, including a potential Team Rubicon Netherlands and a potential Team Rubicon Germany.

31. By design, each existing TR-X is required to meet certain milestones before TRG is able to undertake further expansion to other countries.

32. While TRG promotes a culture of close cooperation with each TR-X, the nature of each relationship is primarily contractual. The TR-Xs are separate legal entities. TRG does not and cannot control those organizations, beyond enforcing the terms of the contracts and licenses it has entered into with each such organization.

**B.  Improper Actions by TR-USA Harming the Team Rubicon Network**

33. From time to time, certain conflicts have emerged within the Team Rubicon network, particularly between TR-USA and TRG. Some degree of conflict is not unexpected, given that TR-USA and TRG are separate and distinct organization pursuing related missions. But since at least 2014, TR-USA leadership has made a series of false allegations that were designed to undermine TRG.

34. In recent months, TR-USA has taken a series of unlawful and extremely aggressive actions against TRG and its interests that unfortunately require judicial intervention. The exact motivation for these actions is presently unknown to TRG, though TRG is aware that certain elements within TR-USA, including TR-USA CEO Jake Wood, began secretly pushing for the dissolution and absorption of TRG into TR-USA in October 2016. Of course, any such absorption would prove problematic for at least certain of the TR-Xs, given they will only work under the auspices of an international organization (TRG) rather than wholly American organization (TR-USA).

35. In August 2019, a meeting of the Team Rubicon Network was convened in Colorado. Following that meeting, it emerged that an individual associated with one of the TR-Xs was alleging that two other individuals had engaged in private misconduct at the meeting.

36. None of the three individuals in question are employed by or represent TRG. Instead, each of these individuals is associated with a TR-X. (Each with a different TR-X).

37. In September 2019, TR-USA wrote to request that TRG take a series of actions with respect to the allegations.

38. TRG promptly took a series of appropriate actions with respect to the allegations, including actions requested by TR-USA. However, TRG explained to TR-USA that it could not take one of the requested actions because that request involved action within the exclusive purview of the TR-Xs. TRG is legally separate and distinct from the TR-Xs. It cannot take any action that would require control of a TR-X, as it does not control any TR-X.

39. On October 9, 2019, TR-USA wrote to TRG claiming that TRG had committed a material breach of the MTLA. TR-USA invoked Section 13(b)(iv) of the MTLA, which permits TR-USA to terminate the MTLA if TRG has engaged in in "misconduct which materially and adversely impacts the License Marks or the associated goodwill" and if TRG then fails to correct the problem within 60 days.

40. On or about December 9, 2019, TR-USA notified TRG that it considered the MTLA terminated due to TRG's purported failure to remedy the supposed breach within the 60 days.

41. TR-USA took this purported action even though: (a) TRG had taken all actions requested by TR-USA that were within TRG's control; (b) the misconduct in question concerned neither TRG nor anyone controlled by TRG; (c) and the allegations of misconduct involve private matters that, because they are unknown to the public, have had no effect, and could have had no effect, on any of TR-USA's marks or associated goodwill. In short, it is plain that there is no legitimate basis for the purported invocation of Section 13(b)(iv) of the MTLA.

42. Thus, TR-USA's attempted termination of the MTLA is supported only by pretextual reasons. In truth, the attempted termination of the MTLA has more to do with a desire

to tear down and irreparably harm TRG and its Team Rubicon Network that it has built over the last five years than to protect intellectual property.

43. Indeed, *weeks prior to the purported termination of the MTLA*, TR-USA had already approached TR-CAN, encouraging TR-CAN to eschew its agreement with TRG and enter into a direct licensing agreement with TR-USA instead, even though the MTLA grants TRG an exclusive right to use and license the marks outside the United States.

44. TR-USA succeeded in inducing TR-CAN to purport to repudiate its agreements and licenses with TRG. On or about December 9, 2019, TR-CAN notified TRG of its intent to repudiate its relationship with TRG and enter into a new direct relationship with TR-USA instead.

45. TR-USA has likewise sought to induce the other TR-Xs to repudiate their agreements with TRG, insisting that TRG is infringing TR-USA trademarks by continuing to use the "Team Rubicon" name. To date, however, the other TR-X entities have refused to repudiate their agreements.

46. TR-USA has taken actions to ensure that any refusal by the other TR-Xs to disassociate from TRG is costly. For instance, in January 2020, TR-AUS, with TRG's support, was fundraising to support its efforts to provide assistance to those adversely affected by the historic bushfires that were ravaging Australia. But representatives of TR-USA, including in at least one instance, the CEO of TR-USA, Jake Wood, contacted potential sponsors, including Activision and Moody's, in retaliation for TR-AUS's decision to honor its relationship with TRG and its refusal to enter into a "transition agreement" with TR-USA. As a result, TR-AUS lost at least $400,000 AUD in potential donation from Activision alone, as Activision was prepared to match up to $200,000 AUD in private donations.

47. Such actions by TR-USA harm not only the TR-X but TRG and the entire Team Rubicon network. TRG's mission is to export the Team Rubicon model around the world. But each existing TR-X must meet certain milestones (including in levels of fund-raising and resources) before TRG may undertake further expansion. TR-USA's actions prevent an affiliate like TR-AUS from meeting its milestones, and thereby interfere with TRG's ability to pursue its mission.

48. Moreover, TR-USA has also interfered with TRG's ability to fundraise. TRG has a direct relationship with many companies, including Activision, which have signaled that they cannot support TRG while TR-USA pressures them not to do so. As a result, TRG has had to shrink its staff by more than 75% recently.

49. For the record, one of the TR-Xs has conducted a thorough, independent investigation of the allegations made following the Colorado meeting in August 2019. That TR-X has concluded that there are serious problems with the conclusions TR-USA reached regarding the incident. Moreover, the TR-X has noted that TR-USA took positions throughout its investigation that were at best unhelpful and at worst obstructive. The findings of the TR-X help underscore the pretextual nature of TR-USA's purported termination of the MTLA.

## CLAIMS FOR RELIEF

**A.    First Cause of Action: Declaratory Relief**

50. TRG repeats, re-alleges and incorporates by reference all prior pleaded paragraphs as though fully set forth herein.

51. A dispute has arisen and a controversy actually exists between TRG and TR-USA concerning the continued viability of the MTLA and whether TRG infringes on TR-USA's trademarks by continuing to use and sublicense the "Team Rubicon" name and associated design

elements.

52.  TR-USA contends that it has validly terminated the agreement for cause pursuant to Paragraph 13(b)(iv).  TRG contends that the MTLA has not been validly terminated, that Paragraph 13(b)(iv) provides no basis for termination given the facts asserted by TR-USA, and that the MTLA therefore remains in full force and effect.

53.  TRG therefore desires a judicial determination of its rights under the MTLA and a declaration that the MTLA remains in full force and effect for any or all of a number of reasons, including that (1) the licensed marks have not been, and cannot have been, either materially or adversely impacted by any non-public activities; (2) to the extent there has been any material or adverse impact on the licensed marks, it is not due to any conduct of TRG; and/or (3) to the extent there has been any material or adverse impact on the licensed marks, TRG has taken all reasonable steps to cure the problem.

54.  TR-USA also contends that TRG is presently infringing its trademarks by continuing to use and sublicense the "Team Rubicon" name and associated design elements.

55.  TRG therefore also desires a judicial determination of its rights under the MTLA and a declaration that (4) its continued use of the trademarks does not infringe on TR-USA's rights.

56.  A judicial declaration is necessary and appropriate at this time under the circumstances in order that the parties may ascertain their rights under the MTLA and all applicable law.

**B.    Second Cause of Action: Breach of Contract**

57.  TRG hereby repeats, re-alleges and incorporates by reference all prior pleaded paragraphs, as though set forth fully herein.

58. The MTLA grants TRG the exclusive right to use and sublicense the licensed marks outside of the United States.

59. TR-USA has failed to meet its obligations under the MTLA in a number of ways, including (a) by attempting to terminate the agreement for a reason and/or in a manner that is not permitted under the agreement, (b) by entering into an agreement with TR-CAN for the licensure of the marks outside of the United States; and (c) by attempting to enter into other agreements for the licensure of the marks outside of the United States.

60. TRG has performed all conditions, covenants, and obligations required by it under the MTLA.

61. As a consequence of TR-USA's actions, TRG has been injured in an amount to be proved at trial that exceeds $75,000.

62. TR-USA's conduct is the proximate cause of the damages suffered by TRG.

**C.    Third Cause of Action: Intentional Interference with Contract**

63. TRG repeats, re-alleges and incorporates by reference all prior pleaded paragraphs as though fully set forth herein.

64. TRG has valid agreements with TR-CAN, TR-UK, TR-AUS, and TR-NOR.

65. TR-USA has knowledge of the agreements between TRG, on the one hand, and TR-CAN, TR-UK, TR-AUS, and TR-NOR, respectively, on the other hand.

66. TR-USA, with the intent to induce a disruption and termination of these agreements, approached each of TR-CAN, TR-UK, TR-AUS, and TR-NOR, encouraging each to repudiate agreements with TRG in favor of replacement licensing agreements directly with TR-USA.

67. TR-CAN succumbed to TR-USA's pressure.

68. TR-USA's conduct has been a substantial factor in causing TRG harm.

69. As a result of TR-USA's interference, TRG has suffered damages in an amount to be proven at trial, but in no event less than $500,000.00.

**D.** **Fourth Cause of Action: Interference with Prospective Economic Advantage**

70. TRG repeats, re-alleges and incorporates by reference all prior pleaded paragraphs as though fully set forth herein.

71. TRG has a direct relationship with Activision and others, and Activision and these other companies have an interest in providing financial support to TRG and its operations.

72. TR-USA knows of these potential relationships.

73. TR-USA has intentionally interfered with these potential relationships, pressuring Activision and others not to donate to TRG by falsely claiming that TRG does not have a valid license to use the Team Rubicon marks.

74. Activision and others have succumbed to TR-USA's pressure, deciding not to donate to TRG.

75. TR-AUS and other TR-Xs also have had a potential sponsorship relationship with Activision, Moody's and others.

76. TR-USA knows of these potential relationships.

77. TR-USA has intentionally interfered with these potential relationships, pressuring Activision and others not to donate to TR-AUS and other TR-Xs by falsely claiming that TR-AUS and other TR-Xs do not have a valid license to use the Team Rubicon marks.

78. Activision and others have succumbed to TR-USA's pressure, deciding not to donate to TR-AUS and other TR-Xs.

79. As a result of TR-USA's interference, TR-AUS and other TR-Xs have faced

difficulty in meeting predetermined milestones for fundraising and other resources, preventing TRG from being able to fulfill its mission and expand to other countries, including Germany and the Netherlands.

80. As a result of TR-USA's interference, TRG has been harmed in an amount to be proven at trial, but in no event less than $75,000.

## PRAYER

**WHEREFORE**, TRG demands judgment in its favor against TR-USA as follows:

1. For a declaration that the MTLA has not been validly terminated by TR-USA but instead remains in full force and effect;

2. For a declaration that TRG continued use of the TR-USA trademarks does not infringe on TR-USA's trademark rights;

3. For compensatory damages in an amount to be proven at trial but in no event less than $75,000.

4. For additional prejudgment interest to the fullest extent permitted by law;

5. For an injunction prohibiting TR-USA from interfering with TRG's exclusive right to use and sublicense "Team Rubicon" and related marks outside the United States;

6. For an injunction prohibiting TR-USA from interfering with the fund-raising activities of TRG and the TR-Xs;

7. For reasonable attorneys' fees;

8. For such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff TEAM RUBICON GLOBAL, LTD. hereby demands a trial by jury on all issues so triable as a matter of right.

DATED: March 24, 2020                Respectfully submitted,

**KESSELMAN BRANTLY STOCKINGER LLP**

/s/ Amy Brantly
Amy Brantly
Majed Dakak*
Mark Paluch*

*Application for admission *pro hac vice* forthcoming

Kesselman Brantly Stockinger LLP
1230 Rosecrans Avenue, Suite 400
Manhattan Beach, CA 90266
Telephone: (310) 307-4556
Facsimile: (310) 307-4570
*abrantly@kbslaw.com*
*mdakak@kbslaw.com*
*mpaluch@kbslaw.com*

*Attorneys for Plaintiff*
TEAM RUBICON GLOBAL, LTD.